**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS  DIVISION**

| | | |
|---|---|---|
| TODD DAVIDSON, WILBERT WIGGINS, GEORGE DOUGLAS, JR., CHARLES MAGEE, DARON THOMPSON, EUGENE SMITH, GEORGE RODGERS, and KENTON SMITH, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 1:03-CV-1882-SEB-JPG |
| vs. | ) ) | |
| CITIZENS GAS & COKE UTILITY, | ) ) | |
| Defendant. | ) | |

**ORDER DENYING CLASS CERTIFICATION**

This matter is before the Court on Plaintiffs' Renewed Motion for Class Certification.  For the reasons discussed in this entry, we deny class certification in this case.

**I.      *Background***

This case was originally filed on December 5, 2003, on behalf of eight African-American employees of the Defendant, Citizens Gas & Coke Utility ("Citizens") who claimed they were required to take a test, known as the Work Competency Assessment ("WCA"), as a part of their efforts to gain promotions.

-1-

Each Plaintiff took and failed the exam but claims in this litigation that the test was not a valid test, that it had a disparate impact on African-Americans in general and caused each of them to be treated unfairly with respect to the promotions they sought and, because of the test, were unable to obtain.  An Amended Complaint,  filed on June 12, 2004, added class action allegations, seeking to include along with the original eight Plaintiffs all other employees who were required to take the WCA in order to be promoted, and added another claim on behalf of employees who were required to take the exam in order to qualify to be hired.  The amended class action complaint asserts disparate treatment and disparate impact claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and proposed that the original eight Plaintiffs serve as class representatives.

Since the first amended complaint was filed in the summer of 2004, this case has involved a protracted series of attempts by Plaintiffs' counsel to add named plaintiffs through sequential amendments to the Complaint.  We denied a prior motion for certification without examination of the merits, and allowed Plaintiffs to refile their motion after completing additional discovery, including conducting a full review of the terms of a settlement that had previously been reached between Citizens and the Equal Employment Opportunity Commission on behalf of a group of African-American job applicants who had taken the test in hopes of obtaining employment.  There are presently before the Court ten

named Plaintiffs, which group includes both current employees who took the WCA for purposes of promotion or transfer and unsuccessful applicants who took the exam in hopes of landing a job with the company.

In addition, we have previously entered a partial summary judgment in Defendant's favor regarding certain disparate impact claims brought under 42 U.S.C. § 1981.  What remains are claims of disparate impact and disparate treatment under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and disparate treatment under 42 U.S.C. § 1981.

Three separate threshold WCA scores factored into the determinations of whether a test-taker qualified for an open supervisory, customer relations or other position.  Plaintiffs seek certification of a class defined according to these categories, as follows:

> All African-American individuals negatively affected by Citizens' use of the WCA, as defined by the following sub-classes:
>
>> a. All African-American employees and applicants who took and did not pass with a score of 542 or higher on Defendant Citizens Gas' Work Competency Assessment test.
>>
>> b. All African-American employees and applicants who took and did not score 570 or higher on Defendant Citizens Gas' Work Competency Assessment.
>>
>> c. All African-American employees and applicants who took and did not score 595 or higher on Defendant Citizens Gas' Work Competency Assessment test.

In the alternative, Plaintiffs propose these same sub-class definitions but with a time limitations period between July 1, 2000 until the date when Defendant stopped using the WCA in 2004. The three sub-classes differentiate among the three scores required to qualify, first, for supervisory (595), second, for customer relations (570) and third, for other (542) positions. If Plaintiffs' analysis and tabulations are correct, the largest of the three sub-classes (those who did not achieve a score of 595 or better) contains more than 1600 members and the smallest contains more than 1100 members; (stated otherwise, fewer candidates achieved the highest scores.)

As previously alluded to, this litigation has proceeded in fits and starts over an extended period of time and for a variety of reasons, including Plaintiffs' counsel's dilatoriness and lack of careful management of the discovery process.[1] Disputes have arisen  between the parties with frustrating regularity at virtually every step of the way, often involving needlessly petty conflicts, such as opposing each other's requests to increase briefing page limits. Perhaps the court, having wearied of these spats and reluctant to expend scarce judicial resources to provide weekly supervision of the parties' unseemly efforts to outdo each other, tolerated for too long Plaintiffs' counsel's faltering attempts to shape and re-shape the issues of her case and refine the

---

[1]In September of 2005 Plaintiffs' counsel was sanctioned for employing a self-help discovery tactic while her motions seeking similar relief were pending before the court.

class allegations.  In any event, we have reached a point where we cannot allow the flow of ink to continue unstaunched, and so we turn once more - hopefully for the final time - to the issue of whether this matter should proceed as a class action.

## II.    *Certification Requirements*

Plaintiffs move for class certification pursuant to Fed.R.Civ.P. 23(b)(3). To achieve class certification they must establish that the requirements of Fed.R.Civ.P. 23(a) have been met and then demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).  The requirements of Rule 23(a) certification are the well known: 1)numerosity, 2)commonality, 3)typicality, and 4) adequacy.  Fed.R.Civ.P. 23(a).  The factors pertinent to a determination of whether common issues predominate making a class action the superior method of proceeding to resolution include:  A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; C) the desirability or undesirability of concentrating the litigation of the claims in the particular

-5-

forum; and D) the difficulties likely to be encountered in the management of a class action.  Fed.R.Civ.P. 23(b)(3).

### III.   *Analysis*

Citizens challenges Plaintiffs' satisfaction of each of the 23(a) prerequisites, in addition to maintaining that questions common to all potential class members do not predominate and that a class action is not a superior method of litigating the dispute under 23(b).  As with other class actions, a Title VII class action may only be certified after a rigorous examination of whether the requirements of Rule 23 have been met.  *General Telephone Co. Of Southwest v. Falcon,* 457 U.S. 147, 161 (1982).  In reaching our decision, recognizing that Citizens has challenged Plaintiffs' 23(a) showings as to the prerequisites of numerosity, commonality and typicality, we choose to focus our analysis on the most compelling deficiency under 23(a), that is, adequacy, and assume, without deciding, for purposes of this ruling that the three other prerequisites have been satisfied.

The fourth prerequisite listed under Rule 23(a) ("adequacy") requires a showing that the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a)(4).  Because the rights of absent class members may be preclusively affected by the action at bar, adequacy of representation is an important linchpin in securing class certification.  It has in

fact been characterized by some court decisions as the most important of the Rule 23(a) prerequisites. *Harris v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 42 (N.D.Cal. 1977)(citing *Hansberry v. Lee*, 311 U.S. 32 (1940)). Even in cases where the named parties stipulate that a class action would be appropriate, appellate courts require district courts to explore the adequacy of representation to assure that the rights of absentee litigants will not being compromised. *See, e.g., Smith v. Sprint Communications Co., L.P.*, 387 F.3d 612 (7th Cir. 2004).

In conducting this assessment of the adequacy of the named Plaintiffs to represent an entire class, we examine their capabilities, diligence and potential conflicts, as well as those of their legal counsel. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986). In the case at bar, we have necessarily concluded that there are severe shortcomings with respect both to the named representative litigants and to their counsel in terms of their adequacy, which warrant rejection of their request for certification.

Consider, for example, the two most recent additions to this action as named plaintiffs. Prior to the time Jimothy Amos and Sidney Williams were added to this lawsuit, the named Plaintiffs were all African-American employees of Citizens who had taken the WCA in an effort to transfer out of Citizens' Manufacturing Division to another division at Citizens. Even though the class initially described in the complaint included job applicants, Amos and

Williams were the first job applicants to appear as named plaintiffs.  So the class as originally constituted did not have any representatives who satisfied the proposed definition until the belated additions of Amos and Williams. Without applicants being included as members of the proposed class, the numerosity prerequisite was problematic for Plaintiffs because Plaintiffs have been able to identify at most only 50 African-American *employee*s who took the test and failed to obtain the score of 542 necessary to qualify to transfer between divisions.[2]  Citizens has made a strong argument that there are actually fewer than 50.  It seems clear that Plaintiffs' delay in moving their case forward to the class certification stage was the result of their tactical decision to secure additional time to round up two more named plaintiffs to represent applicants, and in so doing to substantially increase the number of potential class members overall and,  perhaps not entirely coincidently, to increase the potential for attorney fees as well.[3]

_____

[2]We decline at this juncture to sort out the issues regarding the applicable periods of time during which claims may be pursued, based on the statute of limitations and the timing requirements for any EEOC filing.

[3]In September of 2005, Mr. Amos was added as a named plaintiff and withdrew as plaintiff in an independent action (1:05-cv-468-JDT-WTL) pending before another judge of this court.  Mr. Williams, who had been added as a plaintiff to that same independent action,  was also added to this case as a named plaintiff shortly after Amos was added.  In October, we granted Plaintiffs' request to allow the filing of a Third Amended Complaint.  The other, independent action has since been dismissed in its entirety due to the shift of Amos and Williams to be named plaintiffs in this matter.

Both Amos and Williams testified at deposition that they have previously been convicted of felonies. Williams admits to four felony convictions, including three theft convictions. On his application for employment with Citizens, Williams answered affirmatively the question of whether he had been previously convicted of a felony, but gave no details other than to indicate that he would provide more information in an interview. Amos denied having any felony convictions in his application. When asked about that answer on his application during his first deposition, Amos still did not admit that his application answer was incorrect. However, in a second deposition, he did finally admit to having been convicted of a felony burglary and a DUI offense in Mississippi. Citizens has submitted evidence to indicate that Amos in fact has additional convictions, to the ones he has admitted, including a felony conviction for theft of a vehicle.[4]

The felony convictions of Amos and Williams are relevant to our consideration of class representation issues for two reasons. First, personal

---

[4]In their reply brief, Plaintiffs moved to strike a number of pages of the criminal records of Mr. Amos and the bankruptcy court records from Mr. Williams' bankruptcy, as submitted by Citizens, because they were not previously produced in discovery or properly authenticated. We find no basis to strike these documents. Plaintiffs can not claim surprise with regard to the contents of the documents nor did Plaintiffs make a sufficiently specific document request to require the production of these materials. As to the authentication challenge, Citizens points out that both the criminal records (Docket # 320 Attachment #1, Appendix BB part-1 pg 2 of 47) and the bankruptcy court records (Docket # 320 Attachment#1, Appendix DD pg 5 of 31) were submitted with appropriate certification sheets, which Plaintiffs apparently missed in their review.

characteristics, such as the credibility and  integrity of a putative class representative, have a direct bearing on their ability to adequately represent absent members of the class.  *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003); *Kline v. Wolf*, 702 F.2d 400, 403 (2nd Cir. 1983) (upholding district court's finding that potential class representative's admitted false statements left their credibility open to serious attack).  "Problems of credibility, when sufficiently serious, can prevent a named plaintiff from being certified as a class representative." *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 397 (D.N.J. 1998).  While we acknowledge that functionally the plaintiffs' attorney is most often the true driving force behind the representation of the class, the named representatives are still required to be more than window dressing or puppets for class counsel.[5] *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987).  A putative class representative's lack of credibility should not be allowed to significantly detract from the case.  *In re Frontier Ins. Group, Inc. Securities Litigation*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997).  A representative must, at the very least, be trustworthy enough to protect the interests of the class by working to pursue a remedy which benefits the class as much as it does counsel.  *Kirkpatrick,* 827 F.2d at 727.  This trustworthiness is especially necessary in a situation such as the

---

[5]It should be noted that in deposition Mr. Amos displayed near total ignorance regarding this lawsuit, his role in it or even the reason he was being deposed, admitting that he was recruited by counsel and had signed an affidavit prepared by counsel which contained statements he knew to be untrue when he signed it.

case at bar where Williams and Amos were eleventh-hour additions as plaintiffs, brought in to represent job applicants who as a group would more likely possess less knowledge of the circumstances surrounding the lawsuit then potential class members who are current Citizens employees.

The second reason the records of felony convictions by Amos and Williams are relevant is that the convictions themselves would have barred their consideration for employment with Citizens, regardless of their test scores.  Though a single felony conviction does not necessarily disqualify a prospective Citizens employee from being hired, there is uncontested testimony from Citizens' Human Resources Employment Supervisor that the company screens for criminal convictions and, to the company's knowledge, there has never been an individual with three or more known felony convictions brought on as an employee at Citizens.  Further, Citizens' practice is to conduct a criminal history search on all persons who are offered jobs and, if it is determined that the potential hiree has lied about his criminal record or any other part of his employment application, the employment offer is withdrawn. Even if it remains undecided whether Amos and Williams would have been hired by Citizens – which we seriously doubt – it is likely that their criminal histories would become the focus of their failure to hire claims, as opposed to the common question which allegedly binds together other putative plaintiffs, namely, the WCA test results.

-11-

Amos has multiple felony convictions and lied about them on his application. Williams has multiple felony convictions as well and also filed for bankruptcy after applying for employment at Citizens. The filing of bankruptcy does not cancel out or otherwise prevent Williams's claim of discrimination, but his claim, assuming its legitimacy, should have been listed as an asset and would have thus become the property of the bankruptcy estate. While the failure to list the claim would not trump his discrimination claim either, if he goes forward with it, the estate would have to be reopened and the bankruptcy trustee would become the appropriate party to pursue the claim, and Seventh Circuit precedent makes clear that the trustee of a bankruptcy estate, who has obligations to all unsecured creditors, is not a fair or adequate class representative. *Dechert v. Cadle,* 333 F.3d 801 (7th Cir. 2003).

Thus, Amos and Williams simply are not appropriate class representatives. As for the other eight named Plaintiffs, all of whom are Citizens employees who took the WCA to qualify for transfers or promotions, their discrimination claims may also implicate issues of seniority, collective bargaining contract interpretation, attendance records, and disciplinary records, any one or more of which factors would differentiate them from other applicant class members. Further, we are informed that none of the eight representative employees has executed releases, as the more than fifty applicants did who accepted the settlement previously brokered by the EEOC

with Citizens.  Thus, the persons being proffered as representatives for both subsets of the class-plaintiffs are problematic to say the least.  But it is not only their deficiencies that makes "adequacy of representation" a losing proposition for Plaintiffs.

We concur in Citizens' view that counsel for Plaintiffs has demonstrated a lack of diligence and case management skills thereby casting doubt on her ability to properly pursue the class action proposed here.  Though the names of several lawyers from Plaintiffs' counsel's firm have also entered appearances on behalf of Plaintiffs in this litigation, the lead responsibilities have clearly been shouldered by a single attorney.  The docket reveals as to her performance a persistent pattern of ineffective representation and whether that has occurred as a result of a shortage of professional and support staff assistance or because of simple procrastination, we note by way of understatement that the case has not proceeded smoothly and mistakes of all sorts have marred its progress. The court's electronic docket report for this case is virtually indecipherable and the pace of this litigation is running substantially behind where it should be in terms of moving towards a final resolution.  We discuss below the most significant deficiencies in Plaintiffs' counsel's supervision of this matter.

***Lack of Timely Pursuit of Class Certification***:  Candor requires that the court accept a certain amount of the blame for the most recent delays, because we required  that the class certification motion be refiled following

completion of additional discovery.  However, the additional  discovery,
consisting of efforts that should have been completed earlier, was either
requested by Plaintiffs, or was necessary due to Plaintiffs' counsel's late
additions to the roster of named plaintiffs.  More importantly, Plaintiffs and
their counsel did not seek class certification until a year after the case had
been filed, which was six months after the class action allegations were first
included in a version of their many amended complaints.  The promptness and
efficiency with which class certification is pursued is an indicator of the
adequacy of the representation that absent class members will receive.  *East
Texas  Motor Freight System Inc. V. Rodriguez*, 431 U.S. 395, 405 (1977).
Promptness in this case has been in very short supply.

**Lack of Diligence and Delay**:  Our review of the docket reveals a total of
23 separate instances when Plaintiffs' counsel sought either extensions of filing
deadlines and trial dates or permission to submit omitted or improperly
submitted briefs and supporting materials.  *See* Docket #'s 22, 35, 49, 60, 63,
70, 85, 136, 174, 178, 180, 182, 199, 208, 210, 211, 247, 249, 277, 282, 300,
302, 305.  We do not include in this tabulation the several amended
complaints or multiple versions of witness lists filed on behalf of Plaintiffs.  In
almost every instance, the court allowed Plaintiffs' counsel the opportunity she
sought to correct prior filing mistakes, to file materials belatedly or supplement
previously filed supporting materials.  Our patient indulgence did not prevent

further delay and additional mistakes; they seemed to continue unabated. Recently, because the record has become so confused and clogged with Plaintiffs' multiple, incomplete and amended filings, the Magistrate Judge requested that Plaintiffs' counsel sort out the confusion by filing a written clarification noting which exhibits and supporting materials were complete and could be referenced by the parties and the court in ruling on this or other pending motions.

In response to Citizens' assertion that these numerous examples of tardiness and delay and errors are a basis for the Court's concluding that the class would not be adequately represented, Plaintiffs offered no defense, choosing instead to try to shift the blame to defense counsel by arguing that the defense, too, has been guilty of filing mistakes, of seeking extensions of time and of violating local rules. Plaintiffs' response (even if true) is beside the point, because counsel for defense is not seeking to represent a large number of absent parties. Pointing a finger at defense counsel does not lessen the fact that Plaintiffs' counsel has litigated this matter in a fashion which falls far short of what a group of absent plaintiffs should be able to expect of someone charged with the responsibility of protecting their rights and diligently pursuing their claims. Ratcheting up the number of claimants involved in a lawsuit may have strategic advantages, but with that increase comes a higher level of responsibility on the part of the attorney who seeks the assignment and

the opportunity to faithfully represent many clients who are necessarily absent from direct participation in the litigation process.  Because, practically speaking, it is class counsel who prosecutes the case, it is entirely appropriate, if not mandatory, for a court to assess the adequacy of counsel's representation and in doing so is entitled to draw on observations of counsel's performance in the very litigation at issue.  *See Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002).  "For purposes of determining whether the class representative is an adequate representative of the members of the class, the performance of the class lawyer is inseparable from that of the class representative."  *Id.* at 913.

**_Identification and selection of class representatives_**:  Courts recognize that class counsel necessarily is faced with meeting the immediate strategic demands of prosecuting a class claim, much more so than the named plaintiffs, including the challenge of finding individual plaintiffs who might not otherwise have been available to serve as named parties.  Despite wide discretion and broad responsibility, potential class counsel does not operate without limits in constructing a viable class action.  As our colleague, district court Judge Zagel, observed in denying another class certification request, "[I]f we recognize that counsel have a lot to do with assembling the elements of a class action law suit, including finding plaintiffs, then class counsel ought to do a good job of it."  *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 119 (N.D.Ill. 1993).

As noted previously, this case was not originally filed as a class action. Plaintiffs' counsel sought that status by filing a series of amended complaints and by adding and deleting individual plaintiffs, such as Mr. Amos and Mr. Williams, to serve as class representatives, thus expanding the scope of this lawsuit and in the process buttressing the required showing of numerosity. Those efforts by Plaintiffs' counsel, frankly, have not panned out very well.  As previously discussed, Amos and Williams turned out to be (at best) questionable class representatives due to their felony criminal records and the reduced credibility those criminal records would produce, including the near certainty that,  because of those criminal histories, neither man would have been hired irrespective of their test scores.  Williams's bankruptcy also prevents him from serving as a class representative apart from his criminal history.[6]  Furthermore, more than fifty applicants who presumably would qualify as plaintiffs signed releases in accepting the EEOC facilitated settlement and who, on that basis, have interests which are not aligned with Amos, Williams, or any of the other named Plaintiffs who have not executed any such releases.

---

[6]We realize that there is the possibility that if Williams's bankruptcy estate were reopened, the trustee might elect to abandon the claim, in which case Williams could technically qualify to serve as class representative.  However,  that process would be time consuming and would not ameliorate the credibility issues or the disability to his being hired regardless of test score based on his criminal history.

Counsel's apparent eagerness to enlist Amos and Williams to serve as class representatives in an effort to expand her case into a certifiable class action resulted in a series of hasty, ill-advised actions on her part. For example, rather than taking the time to consult with Mr. Amos and review the important documents with him such as his affidavit and his EEOC charge, we surmise that counsel simply mailed these forms to Mr. Amos with instructions to sign them which he did, with his wife's assistance, after filling in the blanks of the EEOC charge. The result was that Mr. Amos likely perjured himself.

Counsel's demonstrated deficiencies in performance coupled with the fact that none of the putative class representatives adequately represents job applicants, which is by far the largest segment of the proposed class, leaves us with the firm conclusion that Plaintiffs have failed to establish that they are capable of serving as adequate representatives of the class, which is a prerequisite to certification under Fed.R.Civ.P. 23(a).

Failure to establish any of the four prerequisites to certification under Fed.R.Civ.P. 23(a) bars the case from going forward as a class action. A failure to establish adequacy of representation also undermines Plaintiffs' ability to establish the requirements of Fed.R.Civ.P. 23(b)(3), because issues common to the class do not predominate over individual issues and a class action has not been shown to be the superior method of resolving the controversy.

-18-

Plaintiffs have structured this case as both a disparate impact and a disparate treatment case.  As a remedy, they seek to have Plaintiffs placed in the job positions and at the seniority levels they "would have enjoyed" but for the alleged unlawful discrimination.  There is no commonality among these issues which would make a class action appropriate as a means to resolve these disputes.[7]  Indeed, the contrary is true.

Plaintiffs claim that at some point it became known to Citizens, or was so obvious that Citizens should have known, that African-Americans were being negatively impacted by the requirement that a certain score be obtained on the WCA.  According to Plaintiffs, Citizens's continued use of the WCA in the face of its discriminatory impact amounted to intentional disparate treatment of those African-Americans who were required to take it.  We take no position on the merits of this claim or whether there is evidence to support it; what is immediately apparent, however, is that the class and sub-classes have not been defined in a manner which takes these differences into account.  Some employees and applicants have disparate treatment claims under Title VII, which opens up the possibility of their obtaining compensatory and punitive

---

[7]Plaintiffs also allege that on occasion African-Americans were not allowed to take the test, which they contend was a discriminatory act as well committed by Citizens.  Though Plaintiffs have not fleshed out this contention, it would not in any event advance their claims with respect to the commonality, typicality or  predominance issues.  Plaintiffs who claim discrimination based on not having been allowed to take the test at some point are materially distinguishable from the other categories of plaintiffs in this action.

damages; other employees and applicants will assert disparate impact claims, but thus would not in all likelihood be able to establish intentional discrimination.[8]

Whether applicants would have obtained employment without the testing would likely necessitate significant factual inquiries into the individual job requirements.  In addition, the proposed class definitions do not differentiate between those applicant class members who executed releases in connection with the EEOC facilitated settlement and those that did not.  The scope of each release and the settlement achieved thereby and its effect on the remaining individual claims, if any, are important differences among the Plaintiffs.

We anticipate that, because the employees who took the test for purposes of transfer or promotion were in competition with other employees who sought the same positions, including other African-Americans, a careful examination of a variety of person-specific variables would be required, such as a comparison of each applicant's seniority, past performance and job skills.  A plaintiff who otherwise might seem to be a "shoe-in" for a particular transfer or promotion but failed the test by one point also would have a much greater

---

[8]Plaintiffs broadly allege in their complaint that "[D]efendants unlawful actions were willful, intentional, and done with reckless disregard of Plaintiffs' rights."  Beyond that broad allegation, Plaintiffs never assert that the discrimination caused by the test was intentional on the part of Citizens, only that after it became apparent, continued reliance on the testing process made the discrimination intentional.  We offer no judgment as to the merit of this theory.

interest in emphasizing his own circumstances and therefore in directing the
prosecution of his claim than would a person who had applied for any available
job simply in an effort to get out of the Manufacturing Division but failed to
make the cut, in terms of his test scores.  "Individual rather than class
litigation is the best way to resolve person-specific contentions when the stakes
are large enough to justify individual suits."  *Frahm v. Equitable Life Assur. Soc.
of U.S.,* 137 F.3d 955, 957 (7th Cir. 1998).  Transfer or promotion cases
typically include even more person-specific issues than job applicant claims.

The requirement of 23(b)(3) that common issues predominate parallels
the commonality factor under 23(a)(2), but is generally regarded as much more
demanding.  *Amchem Products, Inc. V. Windsor,* 521 U.S. 591, 623-624 (1997).
In order to satisfy the common-issues-predominating requirement, issues that
are subject to generalized proof must predominate over issues requiring
individualized proof.  *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1557-
1558 (11th Cir. 1989).  Proof that the WCA had a discriminatory impact on
every African-American class member does not suffice to establish that
common issues predominate.  The predominance and superiority requirements
translate into the economy and efficiency that a class certification must bring
to the litigation.  2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
§ 4:24 (4th ed. 2002).  If resolution of a common issue requires the court to
resolve a variety of individualized issues, any efficiency that might be gained in

a class action disappears, and the lawsuit becomes even more difficult to
manage.  The circumstances and issues in this case portend such
complications, if a class is certified.

## IV.    *Conclusion*

The named Plaintiffs in this matter have asserted that they and others
were victims of discrimination perpetrated on them by Citizens because of the
testing device Citizens utilized in making hiring and promotion decisions.
Some of the named Plaintiffs may necessarily claim that the discrimination was
intentional and others will necessarily assert claims which are based on an
adverse impact theory.  Obviously, therefore, the class would consist of at least
those two categories.  The two recently added named Plaintiffs (Amos and
Williams) are not adequate representatives of the applicant class for the
reasons previously discussed, and without them there is no other applicant
member to serve as class representative.  In addition, we have serious concerns
regarding the adequacy of Plaintiffs' counsel to manage this litigation based on
her past lapses in diligence and supervision of plaintiffs' case, displaying
patterns of performance which fall far short of what absentee class members
are entitled to expect and receive from class counsel.  While there are some
common issues among the claimants, it is patently clear that they do not
predominate, especially with regard to employees who took the WCA seeking
transfers or promotions.  Finally, because of their individual unique

circumstances, we would reasonably anticipate that many of the plaintiff class members would have a significant interest in directing the prosecution of their own claims.  For all these reasons, Plaintiffs' Renewed Motion for Class Certification (Docket # 286) must be and is hereby DENIED.

IT IS SO ORDERED  03/10/2006


SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Wayne O. Adams III
ICE MILLER LLP
wayne.adams@icemiller.com

Amy Ficklin DeBrota
PRICE WAICUKAUSKI RILEY & DEBROTA
adebrota@price-law.com

Robert David Eaglesfield III
PRICE WAICUKAUSKI RILEY & DEBROTA
deaglesfield@price-law.com

Curtis W. McCauley
ICE MILLER LLP
mccauley@icemiller.com

Steven F. Pockrass
ICE MILLER LLP
pockrass@icemiller.com

-23-

Henry J. Price
PRICE WAICUKAUSKI RILEY & DEBROTA
hprice@price-law.com

William N. Riley
PRICE WAICUKAUSKI RILEY & DEBROTA
wriley@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI RILEY & DEBROTA
rwaicukauski@price-law.com